UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00127-GNS

PREFERRED CARE OF DELAWARE, INC.;
FRANKLIN HEALTH FACILITIES, L.P.
d/b/a FRANKLIN-SIMPSON NURSING &
REHABILITATION CENTER;
PREFERRED CARE PARTNERS MANAGEMENT
GROUP, LP; PCPMG, LLC;
KENTUCKY PARTNERS MANAGEMENT, LLC;
and FRANKLIN HEALTH FACILITIES GP, LLC                         PETITIONERS

v.

TAMMY HEWGLEY, as Administratrix of the
ESTATE OF JUNE HEWGLEY, Deceased                               RESPONDENT

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioners' Motion to Compel Arbitration (DN 3) and Respondent's Motion to Dismiss (DN 8). The motions have been fully briefed by the parties and are ripe for adjudication. For the reasons outlined below, the Motion to Compel Arbitration is **GRANTED IN PART** and **DENIED IN PART**, and the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.    SUMMARY OF FACTS AND CLAIMS

On January 15, 2017, a Warren District Court jury determined that June Hewgley ("Hewgley") was wholly disabled and incapable of managing her personal affairs and financial resources. (Pet. Ex. C, at 1, DN 1-3). The Warren District Court then appointed the Kentucky

Cabinet for Health and Family Services ("CHFS") to act as Hewgley's guardian. (Pet. Ex. C., at 2-3).

For the period of time—exclusive of hospitalizations—from January 16, 2015, to July 18, 2016, Hewgley was a resident of the Franklin-Simpson Nursing & Rehabilitation Center in Franklin, Kentucky, which is owned and operated by Franklin Health Facilities GP, LLC and other entities.[1] (Pet. Ex. A, ¶ 3, DN 1-1). At the time of her admission, Mark Smith ("Smith"), who is a representative of CHFS and was acting as Hewgley's guardian, executed the necessary admission paperwork, which included a document entitled "Alternative Dispute Resolution Agreement" ("Arbitration Agreement"). (Pet. Ex. B, at 5, DN 1-2). In relevant part, the Arbitration Agreement provided that "[t]he Parties voluntarily agree that any disputes covered by this Agreement (herein after referred to as 'Covered Disputes') that may arise between the Parties shall be resolved exclusively by an ADR process that shall include mediation and, where mediation does not successfully resolve the dispute, binding arbitration." (Pet. Ex. B, ¶ 3). As defined, the term "Covered Disputes" included any dispute arising from or related to care rendered by Preferred Care. (Pet. Ex. B, ¶ 4). The Agreement also defined the term "Resident" as follows:

> [A]ll persons whose claim is or may be derived through or on behalf of the Resident, all persons entitled to bring a claim on behalf of the Resident, including any personal representative, responsible party, guardian, executor, administrator, legal representative, agent or heir of the Resident, and any person who has executed this Agreement on behalf of the Resident.

(Pet. Ex. B, ¶ 2(b)).

On June 26, 2017, Tammy Hewgley, as Administratrix of the Estate of June Hewgley ("Estate"), filed a lawsuit in Simpson Circuit Court entitled *Hewgley v. Preferred Care of*

---

[1] The Court will refer to Petitioners in this action collectively as "Preferred Care."

*Delaware, Inc.*, Civil Action No. 17-CI-00211 (the "State Court Action"). (Pet. Ex. A, at 1, DN 1-1). In the state court complaint, the Estate asserted claims for, *inter alia*, negligence, medical negligence, and wrongful death.[2] (Pet. Ex. A, ¶¶ 27-40, ¶¶ 55-66). Following the initiation of the State Court Action, Preferred Care filed this action in federal court asserting jurisdiction under 28 U.S.C. § 1332(a) and Section 4 (9 U.S.C. § 4) of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. Preferred Care seeks to enforce the Arbitration Agreement executed by Hewgley's court-appointed guardian, and Respondent has moved to dismiss this case. (Pet. ¶¶ 28-37, DN 1; Pet'rs' Mot. Compel Arbitration, DN 3; Resp't's Mot. Dismiss, DN 8).

## II. DISCUSSION

In support of its motion to dismiss, Respondent asserts various bases pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7). In particular, Respondent raises the following arguments: (i) the Court lacks subject matter jurisdiction; (ii) Preferred Care failed to join indispensable parties—namely nursing home personnel who are defendants in the State Court Action—as parties to this action; (iii) the Court should abstain from exercising jurisdiction based upon the *Colorado River* abstention doctrine; (iv) the Arbitration Agreement is invalid and unenforceable; and (v) the Arbitration Agreement is unconscionable. (Resp't's Mem. Supp. Mot. Dismiss 2-28, DN 8-1). These same arguments have been unsuccessfully raised in numerous other recent cases before this Court challenging the enforcement of arbitration agreements between nursing homes and its residents or the residents' estates.[3] *See GGNSC Louisville St. Matthews v. Grevious*, No. 3:16-cv-829-DJH, 2017 WL 3623805 (W.D. Ky. Aug.

---

[2] The Estate also asserted claims against various individuals who are not parties to this federal action. (Pet. Ex. B, ¶¶ 11-13, 49-62).

[3] The Court notes that Respondent has failed to cite to or in any way seek to distinguish the adverse decisions of this Court in which its counsel's law firm represented many of the parties unsuccessfully opposing arbitration.

3

23, 2017); *GGNSC Louisville St. Matthews, LLC v. Phillips*, No. 3:17-CV-00406-JHM, 2017 WL 3446181 (W.D. Ky. Aug. 10, 2017); *GGNSC Louisville Camelot, LLC v. Coppedge*, No. 3:16-CV-00834-TBR, 2017 WL 3430579 (W.D. Ky. Aug. 9, 2017); *GGNSC Louisville St. Matthews v. Madison*, No. 3:16-CV-00830-TBR, 2017 WL 2312699 (W.D. Ky. May 26, 2017); *GGNSC Louisville St. Matthews, LLC v. Saunders*, No. 3:17-cv-00185-CRS-CHL, 2017 WL 2196752 (W.D. Ky. May 18, 2017); *GGNSC Louisville Mt. Holly, LLC v. Turner*, No. 3:16-CV-00149-TBR, 2017 WL 537200 (W.D. Ky. Feb. 9, 2017); *GGNSC Louisville Mt. Holly LLC v. Stevenson*, No. 3:16CV-00423-JMH, 2016 WL 5867427 (W.D. Ky. Oct. 6, 2016); *Preferred Care of Del. Inc. v. Estate of Hopkins*, No. 5:15-CV-00191-GNS-LLK, 2016 WL 3546407 (W.D. Ky. June 22, 2016); *Diversicare Highland, LLC v. Lee*, No. 3:15-CV-00836-GNS, 2016 WL 3512256 (W.D. Ky. June 21, 2016); *Golden Gate Nat'l Senior Care, LLC v. Fleshman*, No. 3:15-CV-00891-GNS, 2016 WL 3406159 (W.D. Ky. June 17, 2016); *Owensboro Health Facilities, L.P. v. Henderson*, No. 4:16CV-00002-JHM, 2016 WL 2853569 (W.D. Ky. May 12, 2016); *Riney v. GGNSC Louisville St. Matthews, LLC*, No. 3:16CV-00122-JHM, 2016 WL 2853568 (W.D. Ky. May 12, 2016); *GGNSC Louisville Mt. Holly, LLC v. Mohamed-Vall*, No. 3:16-cv-136-DJH, 2016 WL 9024811 (W.D. Ky. Apr. 6, 2016); *Preferred Care of Del., Inc. v. Crocker*, No. 5:15-CV-177-TBR, 2016 WL 1181786 (W.D. Ky. Mar. 24, 2016); *GGNSC Louisville Hillcreek, LLC v. Watkins*, No. 3:15-cv-902-DJH, 2016 WL 815295 (W.D. Ky. Feb. 29, 2016); *Sun Healthcare Grp., Inc. v. Dowdy*, No. 5:13-CV-00169-TBR, 2014 WL 790916 (W.D. Ky. Feb. 26, 2014); *Life Care Ctrs. of Am., Inc. v. Estate of Neblett*, No. 5:14-CV-00124-TBR, 2014 WL 5439623 (W.D. Ky. Oct. 22, 2014). *See also Preferred Care, Inc. v. Howell*, 187 F. Supp. 3d 796 (E.D. Ky. 2016); *GGNSC Frankfort, LLC v. Tracy*, No. CIV. 14-30-GFVT, 2015 WL 1481149 (E.D. Ky. Mar. 31, 2015).

After considering the arguments of the parties and the cases referenced above, the Court denies the motion to dismiss for the reasons set forth in *Estate of Neblett* and *Crocker*. In short, the Court finds that it has subject matter jurisdiction; that the nursing home personnel are not indispensable parties to this action; and that abstention is not appropriate. *See Estate of Neblett*, 2014 WL 5439623, at *2-7; *Crocker*, 2016 WL 1181786, at *4-6. With regard to the specific circumstances here, the Court will address the validity, unconscionability, and enforceability of the Arbitration Agreement executed by Hewgley's court-appointed guardian below.

A. **Interstate Commerce**

Under the FAA, a written agreement to arbitrate concerning a dispute arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (quoting 9 U.S.C. § 2). Respondent asserts that the Arbitration Agreement is invalid because it does not evidence a transaction involving interstate commerce. Specifically, Respondent argues that"[t]he mere fact that the ADR Agreement asserts that it is a contract involving interstate commerce does not make it so." (Resp't's Mem. Supp. Mot. Dismiss 24).

This argument, however, lacks merit. As this Court reasoned in *Turner*:

> The Supreme Court has interpreted the phrase "involving commerce" in the FAA as signaling the broadest permissible exercise of Congress' Commerce Clause power. Based upon that interpretation, this Court has found on multiple prior occasions that nursing home admission agreements implicate interstate commerce. In [*GGNSC Louisville Hillcreek, LLC v. Warner*, No. 3:13-CV-752-H, 2013 WL 6796421 (W.D. Ky. Dec. 19, 2013)], this Court emphasized that while the nursing care may occur wholly within the borders of Kentucky, the food, medicine, medical, and other supplies all likely come from elsewhere and that it would be impracticable for the nursing home to procure all goods necessary for the daily operations purely through intrastate channels. The *Warner* Court also noted that, like here, Defendant's state court complaint alleged that foreign

entities owned, operated, managed, controlled, and provided services for the nursing home.

*Id.* at 83 (internal citations omitted) (citation omitted). Because the present facts are indistinguishable from *Turner*, the Court concludes that the Arbitration Agreement is a contract involving interstate commerce.

### B. Guardian's Execution of Arbitration Agreement

Respondent also challenges whether Hewgley's court-appointed guardian had the authority to bind any claims that she or the Estate may have had against Preferred Care. (Resp't's Mem. Supp. Mot. Dismiss 25-26). In particular, Respondent maintains that the guardian could not have waived Hewgley's right to a jury trial. (Resp't's Mem. Supp. Mot. Dismiss 25).

As a sister court has explained regarding the legal authority of court-appointed guardians under Kentucky law:

> Guardians have broad powers to ensure a ward's "care, comfort, and maintenance" and to "enable the ward to receive medical or other professional care." Further, guardians are tasked with protecting and effecting the ward's "personal, civil, and human rights." And when a guardian is appointed, the ward is stripped of several rights, including "the right . . . to enter into contractual relationships." So it follows that these rights, once taken from the ward, are vested in the guardian to care for him. Guardians then retain that power unless a court says otherwise.

*Preferred Care, Inc. v. Bleeker*, No. 16-152-ART, 2016 WL 6636854, at *4 (E.D. Ky. Nov. 8, 2016) (internal citations omitted) (citing KRS 387.660). In this case, the order of appointment does not impose any limitation of the authority of Hewgley's guardian to preclude the CFHS from entering into the Agreement on her behalf. (Pet. Ex. B, at 2). As a result, the Arbitration Agreement is valid as applied to Hewgley's personal injury claims asserted in the State Court Action by the Estate. While it does not appear that this Court has considered this issue before,

the U.S. District Court for the Eastern District of Kentucky has upheld the enforceability of an arbitration provision executed by a guardian under Kentucky law. In *Richmond Health Facilities-Madison, L.P. v. Shearer*, No. 5:17-255-KKC, 2017 WL 3273381 (E.D. Ky. Aug. 1, 2017), that court noted:

> Nothing about this case is novel. Shearer is not the first guardian of a nursing home resident who, after signing an arbitration agreement, decided to take her case to the courts instead of to an arbitrator. Nor is she the first to move to dismiss an action to compel arbitration using the arguments she puts forth here. Without doubt, Shearer's motion looks up at [a] mountain of precedent that has uniformly considered and rejected, in one way or another, the main thrust of her claims.

*Id.* at *2 (citing *Turner*, 2017 WL 537200, at *3). Other decisions from that court reach the same conclusion. *See, e.g.*, *Preferred Care, Inc. v. Howell*, 187 F. Supp. 2d 796, 809 (E.D. Ky. 2016); *Preferred Care, Inc. v. Roberts*, No. 5:16-203-KKC, 2017 WL 424868, at *3-4 (E.D. Ky. Jan. 31, 2017); *Golden Living Ctr.-Vanceburg v. Reeder*, No. 16-9-HRW, 2016 WL 4706924, at *3 (E.D. Ky. Sept. 7, 2016); *Brookdale Senior Living, Inc. v. Walker*, No. 5:15-CV-206-KKC, 2016 WL 1255722, at *7 (E.D. Ky. Mar. 29, 2016); *Brandenburg v. Stanton Health Facilities, L.P.*, No. 5:14-183-DCR, 2014 WL 4986569, at *2-3 (E.D. Ky. Oct. 6, 2014). Thus, the Court concludes the Estate is required to arbitrate its claims in this case, with the exception of the wrongful death claim as discussed below. The Court will deny the motion to dismiss and grant the motion to compel arbitration with respect to the Estate's other claims.

C. **Unconscionability**

Respondent also seeks dismissal of this action on the basis that the arbitration provision is unconscionable. (Resp't's Mem. Supp. Mot. Dismiss 26-28). Under Kentucky law, "[t]he doctrine of unconscionability is recognized as a narrow exception to Kentucky's fundamental rule of enforcing validly executing contracts according to their terms." *Davis v. Glob. Client*

7

*Sols., LLC*, 765 F. Supp. 2d 937, 940 (W.D. Ky. 2011) (citation omitted). To determine whether this doctrine precludes enforceability of the arbitration provision, the Court must conduct "a two step process—first, a review focused on the procedures surrounding the making of the arbitration clause (procedural unconscionability) and second, a review of the substantive content of the arbitration clause (substantive unconscionability)." *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 575 (Ky. 2012) (citation omitted).

> With regard to procedural unconscionability, this Court has noted:
>
> Procedural unconscionability, also known as unfair surprise . . . pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language. The Supreme Court of Kentucky recently held that an arbitration clause was not procedurally unconscionable where: the clause was not concealed or disguised within the form; its provisions are clearly stated such that purchasers of ordinary experience and education are likely to be able to understand it, at least in its general import; and its effect is not such as to alter the principal bargain in an extreme or surprising way.

*Davis*, 765 F. Supp. 2d at 941 (internal quotation marks omitted) (internal citation omitted) (citation omitted). Respondent maintains that the arbitration provisions are procedurally unconscionable because the agreements were boilerplate and executed as part of the numerous documents signed during the admissions process. (Resp't's Mem. Supp. Mot. Dismiss 27). The Court rejects these arguments. "That the ADR Agreement is a 'boiler-plate, pre-printed' document does not render it unconscionable." *Warner*, 2013 WL 6796421, at *9. A lengthy admissions process with numerous forms to execute does not rise to the level of unconscionability. *See Watkins*, 2016 WL 815295, at *6 ("[M]any situations—such as buying a house or a car, visiting the doctor, or starting a new job—involve a lengthy process in which an individual must complete a substantial amount of paperwork. This alone does not make a contract procedurally unconscionable.").

Likewise, the arbitration provision is not precluded by substantive unconscionability. As this Court has explained:

> Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. As for substantive unconscionability, courts consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns.

*Davis*, 765 F. Supp. 2d at 941 (internal quotation marks omitted) (internal citation omitted) (citation omitted). Respondent maintains that the provisions were substantively unconscionable because of the gross disparity in bargaining power and the fact that the costs of arbitration were not disclosed. (Resp't's Mem. Supp. Mot. Dismiss 27-28). These arguments also lack merit. A difference in bargaining power alone does not amount to unconscionability. *See Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. App. 2001). From the agreement itself, the arbitration provisions are not substantively unconscionable because: (i) the provisions are plainly stated; (ii) the implications are in capitalized bold type;[4] (iii) the provisions are reciprocal and do not limit recovery by either party; and (iv) the Arbitration Agreement granted Hewgley's guardian the right to opt out of the arbitration provision within thirty days of execution of the agreement. (Pet. Ex. B, at 1-5). While it is true that the fees associated with the arbitration are

---

[4] The Arbitration Agreement specifically contained the following notation on the page immediately preceding the parties' signatures:

> **THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT BY ENTERING INTO THIS AGREEMENT THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED BY A COURT OF LAW OR TO APPEAL . . . . THIS AGREEMENT GOVERNS IMPORTANT LEGAL RIGHTS. YOUR SIGNATURE BELOW INDICATES YOUR UNDERSTANDING OF AND AGREEMENT TO THE TERMS SET OUT ABOVE. PLEASE READ IT COMPLETELY, THROUGHLY AND CAREFULLY BEFORE SIGNING.**

(Pet. Ex. B, at 4).

not disclosed, there is nothing in the record to otherwise support Respondent's naked assertion that arbitration fees are necessarily higher than litigating this dispute in court. Under these circumstances, the Court finds that there is no substantive unconscionability.

For these reasons, the doctrine of unconscionability does not preclude the enforcement of the arbitration provision in this case. The motion to dismiss on this basis will be denied.

### D. Wrongful Death Claim

A different outcome, however, results with respect to Petitioners' attempt to compel arbitration of the wrongful death claims. Under KRS 411.130, a wrongful death claim may be pursued by the decedent's personal representative, and state law specifies the beneficiaries of such claims. *See* KRS 411.130. *See also* KRS 411.140 (providing that a wrongful death claim survives the decedent's death and may be brought by the personal representative). Thus, under Kentucky law, the personal representative of the decedent has the legal duty to bring a wrongful death action even though the personal representative may not be a beneficiary entitled to recover for the decedent's death. *See Vaughn's Adm'r v. Louisville N.R. Co.*, 179 S.W.2d 441, 444 (Ky. 1944).

In *Pete v. Anderson*, 413 S.W.3d 291 (Ky. 2013), the Kentucky Supreme Court reiterated the premise that the wrongful death claim belongs to the statutory heirs of the decedent as opposed to the decedent's estate, explaining:

> [T]his Court's recent decision in *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012) puts to rest any dispute as to whether the statutory beneficiaries are the real parties in interest to a wrongful death action. In *Ping,* the administrator of the estate of a woman who had been a long-term care facility resident brought suit against the operators of the facility alleging negligence resulting in injuries causing the woman's death. Our opinion, which resolved the question of whether a decedent can bind his or her beneficiaries to arbitrate a wrongful death claim, examined the distinction between the wrongful death statute and the survival statute, KRS 411.140. We concluded that while a survival action is derivative of a personal injury claim which belongs to the estate, a

> wrongful death action is an independent claim belonging to the intended beneficiaries under KRS 411.130, a claim that "accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss." Based on the plain language of KRS 411.130 and our holding in *Ping,* we must reject Pete's contention that the wrongful death action belongs to the estate.

*Id.* at 300 (citations omitted) (footnote omitted). *See also Moore v. Citizens Bank of Pikeville*, 420 S.W.2d 669, 672 (1967) ("KRS 411.130 creates a cause of action for wrongful death. This is a statutory right of action which did not exist prior to the wrongful death but arises by reason thereof. It has been pointed out that the wrongful death action is not derivative. It is brought to compensate survivors for loss occasioned by the death and not to recover for injuries to the decedent. The cause is distinct from any that the deceased may have had if he had survived. The damage caused by the wrongful death begins with, and flows from, the death."). Instead, *Pete* clarifies that, under Kentucky law, wrongful death claims belong to the statutory beneficiaries, not to the decedent's estate.

Recently, in *Richmond Health Facilities-Kenwood, LP v. Nichols*, 811 F.3d 192 (6th Cir. 2016), the Sixth Circuit addressed whether a decedent could contractually bind his heirs to arbitrate claims for his wrongful death. *See id.* at 193-94. The court noted that the wrongful death beneficiary was not a party to the arbitration agreement and held that wrongful death claims were not required to be arbitrated based upon *Ping* and its progeny. *See id.* at 197. The Sixth Circuit also concluded that *Ping* was not preempted by the FAA because *Ping* did not disfavor arbitration agreements, but held that only the wrongful death beneficiaries had the right to limit any rights related to those claims. *See id.* at 197-201. In particular, the Sixth Circuit noted:

> Wrongful-death beneficiaries are thus no more or less bound by a decedent's agreement to arbitrate than they are by a decedent's waiver of certain claims, selection of a forum to litigate disputes, or selection of the law governing an agreement. To illustrate, suppose that a decedent and the long-term facility enter

11

into an agreement in which the parties select a Kentucky state court as the forum to litigate the wrongful-death claim. Under *Ping*, the wrongful-death beneficiary is not bound by this forum-selection clause because the decedent never had an interest in the claim itself. And because the beneficiary is not bound by the clause, the beneficiary could very well elect to arbitrate the wrongful-death claim instead—so long as the long-term facility agrees. *Ping* is thus indifferent to arbitration.

*Id.* at 199.

In this case, the Court concludes that Hewgley's court-appointed guardian did not have the authority to waive any rights of the wrongful death beneficiaries under Kentucky law because those claims did not belong to Hewgley. *See id.*; *Pete*, 413 S.W.3d at 300. Accordingly, Petitioners are not entitled to compel arbitration regarding the wrongful death claim because Hewgley's guardian lacked the authority to constrain the claims of her wrongful death beneficiaries.

### III. CONCLUSION

For the reasons outlined above, **IT IS HEREBY ORDERED** as follows:

1. Petitioners' Motion to Compel Arbitration (DN 3) is **GRANTED IN PART** and **DENIED IN PART**. Respondent is **ENJOINED** from proceeding against Petitioners in the State Court Action, except for the wrongful death claims. The parties to this action are **COMPELLED** to arbitrate all claims (except the wrongful death claims), which are the subject of the State Court Action. Counsel **SHALL** promptly notify the Simpson Circuit Court of this Memorandum Opinion and Order.

2. Respondent's Motion to Dismiss (DN 8) is **GRANTED IN PART** as to the wrongful death claim only and **DENIED IN PART** as to all other claims.

3. This case is **STAYED** until the conclusion of the ordered arbitration.

**Greg N. Stivers, Judge**
**United States District Court**

October 5, 2017

cc: counsel of record